```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
JURAJ IVIC,

                              Plaintiff,                                    REPORT AND
                                                                            RECOMMENDATION
              -against-                                                     19-cv-00509 (DG) (JMW)

ADVANCE STORES COMPANY, INCORPORATED
d/b/a ADVANCE AUTO PARTS, NORTH SUNRISE
CORP., LANE-VALENTE INDUSTRIES, INC., SMS
ASSIST, L.L.C., and ABC CORP. a fictitious name
Intending to be that of an unknown contractor,

                              Defendants.
----------------------------------------------------------------------X
SMS ASSIST, L.L.C.,

                              Third-Party Plaintiff,

              -against-

EURO CONTRACTING GROUP, INC.,

                              Third-Party Defendant.
----------------------------------------------------------------------X
```

**A P P E A R A N C E S:**

Lindsay Jill Kalick, Esq.
**Wilson, Elser, Moskowitz,**
**Edelman & Dicker LLP**
1133 Westchester Avenue
West Harrison, NY 10604
*Attorney for Cross Claimants*
*Advance StoresCompany Incorporated*
*d/b/a Advance Auto Parts and*
*Third-Party Plaintiff SMS Assist, L.L.C.*


*No Appearance by Third-Party Defendant.*

1

**WICKS, Magistrate Judge:**

Familiarity with the procedural and factual background of this case is assumed (*see* DE 147.) As relevant to the instant motion, Plaintiff Juraj Ivic had originally commenced an action ("Main Action") against Defendants, Advance Stores Company, Incorporated d/b/a Advance Auto Parts ("Advance"), North Sunrise Corp., Lane-Valente Industries, Inc. ("Lane-Valente"), SMS Assist, L.L.C. ("SMS"), and ABC Corp., for personal injuries he sustained as a result of Defendants' alleged negligence while he was performing construction work. (DE 20.) On August 7, 2019, Plaintiff filed his Amended Complaint. (DE 20.) On September 25, 2019, SMS filed an answer to the Amended Complaint. (DE 32.) On October 9, 2019, SMS filed a Third-Party Complaint against Euro Contracting Group Inc. ("Euro"). (DE 40.) On December 10, 2019, Euro answered the Third-Party Complaint. (DE 49.) On August 6, 2021, Advance filed an amended answer with cross-claims against Euro ("Answer and Cross-Claims"). (DE 101.) On October 12, 2021, Euro filed an answer to Advance's Answer and Cross-Claims. (DE 110.)

The Main Action was dismissed against Lane-Valente (DE 60-61), and ABC Corp., (*see* Electronic Order dated Feb. 17, 2022). Plaintiff then settled his claims with the remaining Defendants, and the Main Action between those parties was dismissed with prejudice on Feb. 17, 2022. (*See* Electronic Orders dated Feb. 17, 2022.) Thus, only SMS and Advance's ("Moving Defendants") third-party action and cross-claims against Euro remain in this case. (*Id.*) Moving Defendants' claims against Euro are based in contractual indemnity and breach of contract. Before the Court is Moving Defendants' motion for default judgment, as to their contractual indemnity claims (DE 157) on referral to the undersigned from the Hon. Diane Gujarati for a Report and Recommendation. (Electronic Order dated May 16, 2022.) For the reasons stated herein, the undersigned respectfully recommends granting the Moving Defendants' motion.

2

## BACKGROUND

Plaintiff brought this action for personal injuries suffered on January 15, 2018 (DE 157-3 at ¶ 11.) Plaintiff was performing construction work at 209 Sunrise Highway, Merrick ("Subject Premises") as a construction laborer. (*Id.*) Plaintiff sustained personal injuries while falling from an elevated height while at the Subject Premises. (DE 157-3 at ¶ 128.) The premises was owned by North Sunrise Corp. and leased to Advance. (DE 157-20 at 1.) Advance hired SMS as Advance's facilities maintenance contractor for certain Advance stores, including the Subject Premises. (*Id.*) SMS entered into an Affiliate Master Services Agreement ("Agreement") with Euro, which also provides facility maintenance services. (DE 157-5 at 1.) Plaintiff was employed by Euro at the time he sustained the injuries. (DE 157 at ¶ 12.) Thus, Moving Defendants seek default judgment against Euro for their contractual indemnity claims pursuant to the indemnification provision of the Agreement. (DE 157-20 at 3.)

As of February 17, 2022, only Moving Defendants' third-party action and cross-claims against Euro remain in this case. (*See* Electronic Order dated Feb. 17, 2022.) On October 27, 2021, Moving Defendants made a motion for summary judgment against Euro, (*see* DE 117). On February 16, 2022, the Court had granted Euro's counsel's request to withdraw as counsel and stayed the proceedings until March 21, 2022 to allow Euro to retain new counsel while also cautioning Euro that if it fails to do so, SMS may move for default judgment against it. (DE 147.) A copy of that order was served upon Euro at its last known address and email address. (DE 148.) After Euro failed to appear, Moving Defendants withdrew their motion for summary judgment without prejudice to renewal and then requested a certificate of default, which was subsequently entered by the Clerk of the Court on May 13, 2022. (DE 156.) Thereafter, Moving Defendants made the instant motion for default judgment (DE 157), which was referred to the

undersigned on May 16, 2022, by the Hon. Diane Gujarati.  (Electronic Order dated May 16, 2022.)  Moving Defendants seek default judgment for their contractual indemnity claims to recover a total of $1,510,148.52 in damages for "their actual costs in defending and settling the main action" broken down as follows: (1) $1,300,000 paid in settlement of the Main Action, and (2) $210,148.52 for legal fees and expenses.  (DE 157-20 at 3.)

## **LEGAL STANDARD UNDER RULE 55(b)**

There is a two-step process for the granting of default judgments under Fed. R. Civ. P. 55.  First, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action.  *See* Fed. R. Civ. P. 55(a); *see also* E.D.N.Y. Local R. 55.2.  After the clerk's certificate of default is issued and posted on the docket, a party may apply for entry of a default judgment.  Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local R. 55.2(b).  The decision to grant a motion for default is left to the discretion of the district court.  *United States v. Dougherty*, No. 15-cv-554 (ADS) (AKT), 2016 WL 5112063, at *3 (E.D.N.Y. Aug. 1, 2016), *report and recommendation adopted*, 2016 WL 4705549 (E.D.N.Y. Sep. 7, 2016).  A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-cv-1878(RJD)(JMA), 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (finding that a default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true).

However, the movant must still demonstrate that the allegations set forth in the complaint state valid claims.  *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's

4

allegations establish the defendant's liability as a matter of law'" prior to entering default judgment (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (alterations omitted)). The court must therefore ensure that (1) Moving Defendants satisfied all the required procedural steps in moving for default judgment, *see* Local Civ. R. 55.2; that (2) Moving Defendants' allegations, when accepted as true, establish liability as a matter of law, *see Finkel*, 577 F.3d at 84; and that (3) Moving Defendants have provided a sufficient basis for determining damages, *see Greyhound Exhibitgroup*, 973 F.2d at 158.

## DISCUSSION

As an initial matter, default against Euro was appropriately entered for Euro's failure, as a corporate defendant, to timely retain substitute counsel to "otherwise defend" the action as stated in Rule 55(a). *See City of New York*, 645 F.3d at 130 (citations omitted) (citing cases); *see also Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180, 192 (2d Cir. 2006) (noting that "[it] is settled law that a corporation may not appear in a lawsuit against it except through an attorney, and that, where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it . . . ." (citation omitted)). This is irrespective of the fact that Euro filed answers to the third-party complaint and cross-complaint earlier in the litigation, (DE 49, 110). *See Mickalis Pawn Shop, LLC*, 645 F.3d at 130 (finding no abuse of discretion for entry of default against defendants that protested that default cannot be entered against defendants that file an answer). Given Euro's default, the undersigned respectfully recommends *sua sponte* that the District Court strike Euro's answers so that the Court can "focus on the Complaint alone[.]" *See Gutierrez v. Taxi Club Management Inc.*, No. 17-cv-532 (AMD) (VMS), 2018 WL 3432786, at *2 (E.D.N.Y. June 25, 2018), *report and recommendation*, 2018 WL 3429903 (E.D.N.Y. July 16, 2018) (same); *see also Trustees of the Paper Prod., Miscellaneous Chauffers, Warehousemen*

5

*& Helpers Union Local 27 Welfare Tr. Fund & Pension Fund v. J & J Int'l Logistics, Corp.,* No. 12 Civ. 1475 (ILG) (VMS), 2013 WL 5532710, at *1 (E.D.N.Y. Oct. 4, 2013) (adopting report and recommendation) (striking corporate defendant's answer where it failed to appear with counsel after its former counsel withdrew); *Next Proteins, Inc. v. Distinct Beverages, Inc.*, No. 09-cv- 4534 (DRH) (ETB), 2012 WL 314871, at *2 (E.D.N.Y. Feb. 1, 2012) ("In entering default judgment against a corporate defendant for failing to appear by counsel, it is also appropriate for a court to strike the answer and counterclaims of that defendant.").

### A. Procedural Compliance

Local Civil Rule 7.1 requires motions to include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion. E.D.N.Y. Local R. 7.1(a)(1) - (3). Local Civil Rule 55.2 requires that a party moving for default judgment append to its application the Clerk's certificate of default, a copy of the claim to which no response has been made, a proposed form of default judgment, and that all papers submitted to the Court under Rule 55.2(b) be mailed to the party against whom a default is sought at the last known address of such party with proof of mailing filed with the Court. E.D.N.Y. Local R. 55.2(b) - (c). Moving Defendants filed the subject motion for default judgment (DE 157), which includes a proposed judgment (DE 157-19), a memorandum of law (DE 157-20), a declaration in support (DE 157-1), a copy of the relevant pleadings (DE 157-2-8), the certificate of default as to Euro entered by the Court on May 13, 2022 (DE 157-16), and the affidavit of service confirming service of the motion for default as to Euro via first class mail. (DE 157-21.) Accordingly, the Court finds that the instant motion complies with the procedural requirements of the Local Civil Rules.

6

B. **Contractual Indemnification**

Well-pleaded allegations in a complaint are presumed true when a defendant fails to present a defense to the court. *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 82 (E.D.N.Y. 2020). However, "a plaintiff still must demonstrate that the factual allegations set forth in [the] complaint state valid claims to relief." *Id.* (citing *United States v. Meyers*, 236 F. Supp. 3d 702, 708 (E.D.N.Y. 2017)).

"A federal court sitting in New York must apply New York's choice of law rules when its jurisdiction is based on diversity." *Merch. Cash & Cap., LLC v. Haute Soc'y Fashion, Inc.*, No. 16-CV-2696 (ILG), 2017 WL 2912452, at *2 (E.D.N.Y. July 6, 2017) (quoting *Med. Research Assocs., P.C. v. Medcon Fin. Servs.*, 253 F. Supp. 2d 643, 647 (S.D.N.Y. 2003)). "New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or a violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Id.* (quoting *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000). The Agreement includes a clear choice of law provision, which instructs that the Agreement is to be governed and construed under Illinois law, and thus, Illinois law governs Moving Defendants' contractual indemnification claims. (DE 157-5 at ¶ 34.) Taking the well-pleaded facts in the pleadings as true, and having reviewed the Agreement, the Court finds that Euro is liable for default judgment on Moving Defendants' contractual indemnification claims.[1]

---

[1] The Agreement, and other pleadings referenced herein such as the Amended Complaint, are either attached to or expressly referenced in the Third-Party Complaint, and thus, properly considered on this motion, (*see* DE 40). *See Annuity v. Carlo Lizza & Sons Paving, Inc.*, No. 19-cv-2180 (ENV) (ST), 2020 WL 9814082, at *3 n.1 (E.D.N.Y. Mar. 11, 2020) ("Documents that are relied on and referred to in the complaint are considered incorporated by reference into the complaint and therefore properly before the court deciding a default judgment motion."); *see also Gesualdi v. Interstate Masonry Corp.*, No. 12-CV-0383 (NGG) (VMS), 2014 WL 1311709, at *3 (E.D.N.Y. Mar. 28, 2014) (collecting cases).

SMS alleges that if Plaintiff was damaged as alleged in the Amended Complaint, then those damages were wholly or in part "by reason of the carelessness, negligence, fault, want of care, breach of agreement or contract, and breach of obligations on the part of [Euro] in connection with the subject incident, and not due to any negligence of [SMS]." (DE 157-4 at ¶ 19.)  And SMS, pursuant to the Agreement, is entitled to contractual indemnification from Euro for "all claims brought in the underlying action, together with costs incurred in defending the underlying action, including attorney fees." (DE 157-4 at ¶ 25.  In the Third-Party Complaint, SMS impleaded Euro "by reasons of its negligent and/or otherwise wrongful conduct and/or otherwise wrongful conduct . . . and/or failure to defend and indemnify" both SMS and "any other parties or entities that" SMS "may be obligated to defend and/or indemnity, in connection with the subject incident." (DE 157-4 at ¶ 16.)  Similarly, Advance's Answer and Cross-Claims seek, in part, contractual indemnification from Euro.  (*See* DE 157-7 at ¶ 205).

Under Illinois law, it is hornbook law that "[i]f the words in the contract are clear and unambiguous, they must be given their plain, ordinary, and popular meaning." *See Greenwood v. FCA US LLC*, No. 3:21-cv-50270, 2022 WL 846884, at *2 (N.D. Ill. Mar. 22, 2022); *see also Buenz v. Frontline Transp. Co.*, 227 Ill. 2d 302, 308, 882 N.E.2d 525, 528-29 (Ill. 2008) ("An indemnity agreement is a contract and is subject to contract interpretation rules.").  Here, SMS entered into the Agreement with Euro under which:

> To the fullest extent permitted by applicable law, Contractor shall defend, indemnify and hold harmless SMS Assist, Customer . . . from and against any and all claims, demands, losses, expenses, damages, liabilities, fines, and penalties . . . arising out of or relating to: (a) Contractor's performance of or the failure to perform the Work; (b) a breach of this Agreement by Contractor or any of its affiliates, subcontractors, agents or employees; (c) any negligence or willful misconduct by Contractor or its affiliates, subcontractors, agents or employees; (d) a violation of law . . . . The foregoing indemnification shall extend to all legal, defense and investigation costs, and all other reasonable costs, expenses and liabilities incurred by the party indemnified, from and after the time at which the

8

party indemnified receives written or verbal notification that a Claim has been or may be made, or the Agreement has been breached . . . ."

(DE 157-5 at ¶ 22.)

The language of the Agreement unambiguous states that Euro is to indemnify SMS and Advance for claims relating to or arising out of Euro's performance of the work, or the negligence or willful misconduct of Euro or any of its employees.[2] The Main Action, based on which Moving Defendants seek contractual indemnification, was settled between Plaintiff, Advance, North Sunrise Corp., and SMS on February 17, 2022. (*See* Electronic Orders dated Feb. 17, 2022). That action involved, *inter alia*, Plaintiff's claims of negligence against all Defendants including Advance and SMS for an injury that occurred on January 15, 2018, while Plaintiff was employed by Euro. (*See* DE 157-2; DE 157-4 at ¶ 14.) SMS was Advance's facilities maintenance contractor, and Euro was a contractor engaged by SMS at the Subject Premises providing facility maintenance services pursuant to the Agreement for SMS. (DE 157-3 at ¶ 126; DE 157-20 at 1; DE 157-5 at 1.) If Euro's employee was injured at the Subject Premises, through no fault of Moving Defendants and through the negligent and/or wrongful conduct of Euro or its employee, then Euro is required to indemnify Moving Defendants for their costs and expenses incurred with respect to the Main Action.

Moreover, the indemnity provision in the Agreement is enforceable under Illinois law. The Illinois Construction Contract Indemnification for Negligence Act ("Indemnification Act") "voids any agreement in a construction contract to indemnify or hold harmless a person from that person's own negligence." *Simmons v. Citation Oil & Gas Corp.*, No. 19-cv-00053 (JPG), 2021

---

[2] In the Agreement, "Contractor" refers to Euro and "Customer" refers to any customer identified on "any Work Order" that SMS provides to Euro describing the work ordered. (DE 157-5 at ¶ 2.) Here, Advanced was the Customer for the work Plaintiff was doing at the Subject Premises, (*see* DE 117-11).

WL 2073748, at *3 (S.D. Ill. May 24, 2021). Essentially, "as a matter of public policy, courts will not enforce promises to indemnify contained in construction contracts because their dominant aspect is the disincentive for the indemnitee to exercise care." *Id*.

Here, the indemnity provision requires Euro to indemnify SMS "from and against any and all claims . . . damages . . . arising out of or relating to: (a) Contractor's performance of . . . the Work . . . (c) any negligence or willful misconduct by Contractor or its … agents or employees . . . (d) a violation of law . . . ." (DE 157-5 at ¶ 22.) Further, the indemnity provision states that it is "absolute and unconditional and shall apply even if there are allegations that any of the Indemnified Parties contributed to the Claim" (*Id*.) The Court finds that the indemnity provision of the Agreement does not require Euro to indemnify SMS for SMS' own negligence. *See Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 217, 676 N.E.2d 1295, 1303 (1997) ("[W]e recognize that a construction of a contract which renders the agreement enforceable rather than void is preferred.").

First, this provision does not expressly require Euro to indemnify SMS for SMS' negligence or that of SMS' customers. *See Biedzycki v. Ne. Illinois Reg'l Commuter R.R. Corp.*, No. 96 C 571, 1998 WL 150724, at *3 (N.D. Ill. Mar. 27, 1998) ("[A]n indemnification provision must explicitly indemnify a party for its' own negligence before such a provision will be void under the Act. Absent such explicit language, the indemnification provision is presumed to indemnify that party only against the negligence of another."). And the portion of the indemnity provision that states it is "absolute and unconditional and shall apply even if there are allegations that any of the Indemnified Parties contributed to the Claim," (*see* DE 157-5 at ¶ 22) can also be read as a waiver of the cap on an employer's liability for contribution rather than an impermissible construction of the indemnity provision. *See Braye*, 175 Ill. 2d 201, 217, 676

10

N.E.2d 1295, 1304 (construing a provision holding defendant liable for its all losses arising from its own actions as a waiver of the limit on employer contribution rather than a violation of the Indemnification Act).

Second, the parties signed this Agreement on March 9, 2017 when the Indemnification Act was already long in effect, (*see* DE 157-5 at 8). *See id*. (noting that the Indemnification Act was in effect at the time the parties entered into the contract, and thus, the court presumes the parties did not intend the indemnity provision to extinguish the parties' "incentive to exercise care with respect to the construction taking place on its premises"); *see also Liccardi v. Stolt Terminals, Inc.*, 178 Ill. 2d 540, 549, 687 N.E.2d 968, 973 (1997) (presuming the parties knew that indemnity promises as to a party's own negligence are void).

Third, the Third-Party Complaint does not indicate that SMS believes that it is entitled to indemnification for its own negligence. SMS seeks to hold Euro liable for any negligence or violation of applicable law on Euro's part "and not due to any negligence of [SMS]," (*see* DE 157-4 at ¶¶ 18-19, 22). *See id.* at 178 Ill. 2d 540, 550, 687 N.E.2d 968, 973 ("Because Stolt did not construe paragraph seven as relieving it of liability for its own acts or omissions, that paragraph did not extinguish Stolt's incentive to exercise due care, and the primary purpose behind the Construction Contract Indemnification for Negligence Act was not implicated."); *see also Biedzycki*, 1998 WL 150724, at *3 (finding indemnification provision enforceable since the complaint sought indemnification for defendant's negligence rather than plaintiff's own potential negligence).

Accordingly, the undersigned respectfully recommends that the Court grant Moving Defendants' request for default judgment on their claims for contractual indemnification.

11

C. **Damages**

Once liability for default is established, the next inquiry is damages. A party's default constitutes a concession of all well-pleaded allegations, however, such default "is not considered an admission of damages." *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 271 (E.D.N.Y. 2019) (quoting *Cement & Concrete Workers Dist. Council Welfare Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)). Regardless of "the absence of opposition" due to the default of defendant, "the court cannot simply accept a statement of the plaintiff concerning the amount of damages, but rather must be provided with evidentiary proof that establishes the amount of damages." *Century 21 Real Est. LLC v. Team Mates Realty Corp.*, No. 07-cv-4134 (NG) (VVP), 2009 WL 910655, at *5 (E.D.N.Y. Feb. 18, 2009), *report and recommendation adopted*, 2009 WL 890561 (E.D.N.Y. Mar. 31, 2009). Although "court[s] must ensure that there is a basis for the damages specified in a default judgment, [they] may, but need not, make the determination through a hearing." *Fustok v. Conticommodity Servs., Inc.*, 122 F.R.D. 151, 156 (S.D.N.Y. 1998), *aff'd*, 873 F.2d 38 (2d Cir. 1989).

i. **Actual Costs under the Agreement**

Moving Defendants seek to recover their actual costs of $1,300,000 paid in settlement of the Main Action. (DE 157-20 at 3.) The plain language of the Agreement supports this request. The Agreement provides in relevant part that:

> If Contractor shall fail to promptly and diligently defend any Claim upon request, the Indemnified Parties may do so and Contractor shall, in addition to all other liability under this paragraph, be liable for all costs, expenses, attorneys' fees, damages, awards, judgments and liabilities incurred by the Indemnified Parties.

(DE 157-5 at ¶ 22.)

Moving Defendants support this request with (1) a copy of the settlement agreement ("Settlement Agreement") executed with respect to the Main Action (*see* 157-9); (2) the affidavit of Peter M. Waldron ("Waldron Affidavit"), a Senior Claims Specialist at Axis Insurance Company ("Axis"), which is one of SMS and Advance's insurers (*see* DE 157-18); and (3) the affidavit of Cheryl B. Lake ("Lake Affidavit"), a Claim Specialist at Twin City Fire Insurance Company ("Twin City") which is one of SMS and Advance's insurers (*see* DE 157-17).

The Settlement Agreement provides for a release by Plaintiff Juraj Ivic of his claims related to the Main Action against, amongst others, Advance and SMS in consideration for $1,300,000. (DE 157-9 at 1.) The Lake Affidavit and Waldron Affidavit, and the documentary evidence attached thereto, reflect that $1,000,000, and $300,000, were contributed by Twin City and Axis, respectively, on behalf of Moving Defendants, toward settling the Main Action. (DE 157-17; DE 157-18.) Accordingly, Moving Defendants have sufficiently established the actual costs of defending and settling the Main Action were $1,300,000 and the undersigned respectfully recommends an award in that amount.

### ii.    Attorneys' Fees and Costs under the Agreement

Moving Defendants seek $210,148.52 for legal fees and expenses. (DE 157-20 at 3.) "Under Illinois law, 'attorney fees are recoverable where required by the specific terms of a written contract of indemnity.'" *See CSX Transp., Inc. v. Chicago & N. W. Transp. Co.*, 62 F.3d 185, 192 (7th Cir. 1995). As discussed above, such fees are contemplated in the Agreement. (*see* DE 157-5 at ¶ 22 ("all costs, expenses, attorneys' fees, damages, awards, judgments and liabilities incurred by the Indemnified Parties.")). Thus, an award of attorneys' fees and costs is

13

appropriate here.  However, Moving Defendants have not provided insufficient information to support and award for the fees its requests.

This Court "enjoys broad discretion in determining the amount of a fee award." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 307 (2d Cir. 2011).  The lodestar calculation, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," "creates a 'presumptively reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).  "A party seeking an award of attorney's fees bears the burden to document 'the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflected, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done.'" *Bds. Trs. Ins., Annuity, Scholarship, & Apprenticeship Training Funds Sheetmetal Workers' Int'l Ass'n, Loc. Union No. 137 v. Liberty Signs, Inc.*, No. 10-cv-1737 (ADS) (AKT), 2011 WL 4374519, at *6 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 4373893 (E.D.N.Y. Sept. 19, 2011).

Here, Moving Defendants support their requests for attorneys' fees and costs with the Lake Affidavit.  (DE 157-17.)  Attached to the Lake Affidavit is a "report, generated by [Lake] from Twin City's computer records, documenting $210,148.52 in legal fees and expenses paid" by the insurer for SMS and Advance's defense of this action.  (*Id*. at 3.)  The report shows the amount and date of each payment but otherwise is devoid of any indication of the billing attorney, the background or experience of attorneys, description of work done, and so forth.  (*See id*. at 7-11.)  This alone is insufficient to support the fees requested.  *See Westchester Fire Ins. Co. v. Annex Gen. Contracting, Inc.*, No. 14-cv-5747 (JS) (AKT), 2016 WL 11481197, at *20 (E.D.N.Y. July 15, 2016), *report and recommendation adopted,* 2016 WL 4367957 (E.D.N.Y. Aug. 15, 2016) (declining to award fees sought pursuant to an indemnity provision where the

14

party had not "submitted contemporaneous billing records identifying the legal and non-legal personnel at the [] firm who rendered legal services, or an affirmation from an attorney regarding the services rendered, his or her background and experience, and the customary fees and/or hourly rate charged for similar legal services."). Accordingly, the undersigned respectfully recommends the Court deny Moving Defendants' request for legal fees and costs without prejudice to renewal with the requisite documentation.

## CONCLUSION

Accordingly, the undersigned respectfully recommends that the Moving Defendants' motion for default judgment be granted, and default judgment be entered in the amount of $1,300,000 with post-judgment interest[3] accruing at the federal statutory rate from entry of judgment until the judgment is paid in full.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604

---

[3] "Pursuant to 28 U.S.C. § 1961, '[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.'" *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citation omitted).

15

(2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated: Central Islip, New York
December 19, 2022

                                          RESPECTFULLY RECOMMENDED:
                                          /S/ *James M. Wicks*
                                          JAMES M. WICKS
                                          United States Magistrate Judge